# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| GRENDA RAY HARMER, | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO. 3:11-0985 |
| | ) JUDGE CAMPBELL/KNOWLES |
| | ) JURY DEMAND |
| DON CAUDLE, et al., | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court upon a Motion to Dismiss filed by Defendants Derrick Schofield, Reuben V. Hodge, Denise L. Moran, Jerry Lester, and Cynthia Clark. Docket No. 66. Defendants have filed a supporting Memorandum of Law. Docket No. 67. Plaintiff has submitted a Response to the Motion. Docket No. 107.

This is a pro se, in forma pauperis case filed pursuant to 42 U.S.C. § 1983 by an inmate in the custody of the Tennessee Department of Correction. Docket No. 47. Plaintiff states in his Amended Complaint that he makes six claims: (1) cruel and unusual punishment in violation of the Eighth Amendment; (2) deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment; (3) denial of due process in violation of the Fourteenth Amendment; (4) denial of equal protection of the law in violation of the Fourteenth Amendment; (5) medical malpractice; and (6) negligence.

Plaintiff essentially avers that he signed up for sick call on June 8, 2010, because of

"intense pain in his right knee that was causing him to limp." Docket No. 47, p. 4. He was referred to Dr. McGee, who ordered x-rays. Dr. McGee reviewed the x-rays, told Plaintiff he had "mildly degenerative arthritis" in his right knee, and ordered physical therapy to treat Plaintiff's right knee. Plaintiff avers that there was some disagreement between two physicians concerning whether Plaintiff needed an MRI. One of the physicians decided that Plaintiff should have physical therapy, and Plaintiff asked the other physician whether physical therapy was appropriate. That physician advised Plaintiff that "refusing PT was not a wise choice," and that he should go along with the other doctor's decision. He further stated that if the physical therapy did not correct the problem, Plaintiff could then have an MRI.

Plaintiff avers that he underwent physical therapy performed first by Dave Crumpler, then by Don Caudle. Mr. Crumpler is not a party to this action. Mr. Caudle is a Defendant in this action, but he is not a party to the instant Motion. Plaintiff did the physical therapy exercises at the direction of Mr. Crumpler, but he avers that his right knee pain increased and his limp worsened. Plaintiff avers that when he complained to Mr. Crumpler about his worsened limp and pain:

> Mr. Crumpler advised Plaintiff the exercises would at least strengthened [*sic*] his right knee for surgery or he could refuse PT. Plaintiff responded that he could not refuse PT because if he did he would not get his knee fixed.

Docket No. 47, p. 5.

Mr. Caudle then became Plaintiff's physical therapist. He gave Plaintiff some of the same exercises that Mr. Crumpler had given him. Plaintiff complains that he did the physical therapy exercises, but again his right knee pain increased and his limp worsened.

Plaintiff also complains that Mr. Caudle allowed another inmate "to instruct Plaintiff" in

2

performing some of his physical therapy exercises. *Id*., p. 7. When Plaintiff complained that the other inmate was not trained to provide physical therapy, Mr. Caudle stated that he "would be right there watching." *Id*. Plaintiff conceded "reluctantly," but with objections. *Id*. Plaintiff states that he injured himself while carefully following the other inmate's instructions.

Plaintiff subsequently had surgery on his right knee in March 2011. At some point, another physician discovered that Plaintiff had degenerative joint disease and needed a hip replacement. *Id*., p. 12.

In his Amended Complaint, Plaintiff identifies the moving Defendants as follows. Defendant Denise Moran was "the Director of Investigations." *Id*., p. 3. Defendant Clark was the Grievance Chairperson. Defendant Lester was the Warden of TCIX. *Id.* Defendant Hodge was the Assistant Commissioner of Operations of TDOC. Defendant Schofield was the Commissioner of the TDOC. All of the moving Defendants are sued both in their individual capacities and in their official capacities.

For purposes of analyzing the instant Motion, it will be helpful to note that Plaintiff's allegations against the moving Defendants involve two different claims. First, Plaintiff's complaints against Defendants Clark, Lester, Hodge, and Schofield all relate to a grievance Plaintiff submitted on March 24, 2011, which Plaintiff claims was "denied," but which actually was deemed "resolved." Second, Plaintiff's claims against Ms. Moran, who is not an employee of the Department of Correction, relate to her alleged denying Plaintiff's access to medical complaint processes under "T.C.A. Title 63."

With his 38-page Complaint, Plaintiff also submitted 67 pages of Exhibits.[1] Reading the Complaint together with some of the Exhibits, it appears that Plaintiff's complaint concerning his grievance is as follows. Plaintiff was housed mainly at Turney Center Industrial Prison ("TCIX"). In late February 2011, he was transferred to Deberry Special Needs Facility ("DSNF") for surgery on his right knee. That surgery was performed by Dr. Baker on March 2, 2011.

On March 17, 2011, Plaintiff had a consultation with Dr. Baker, apparently at DSNF, regarding his right knee, at approximately 2:30 p.m. Dr. Baker gave Plaintiff information concerning his status, and, according to Plaintiff, stated that Plaintiff's right knee was in such bad condition that he "would not medically clear [Plaintiff,] in order to keep him housed at DSNF until after he successfully complete[d] PT . . . ." Docket No. 47, p. 14. The next day, Plaintiff "discovered" that Dr. McNeil, who had treated Plaintiff at TCIX, had authorized Plaintiff to be transferred to TCIX eight hours prior to Plaintiff's consultation with Dr. Baker. Plaintiff claims that, as a direct result of Dr. McNeil's authorizing Plaintiff returned to TCIX without being "medically cleared" by Dr. Baker, he was further injured as a result of falling.

Because Plaintiff had been transferred back to TCIX, he filed his grievance against Dr. McNeil there. He essentially complained that, even though his surgeon Dr. Baker determined he was not "medically cleared," Dr. McNeil determined that he was. His grievance states in

---

[1] Plaintiff later submitted an Amended Complaint (Docket No. 47). While Plaintiff did not file Exhibits with the Amended Complaint, the Amended Complaint refers to Exhibits that were filed with Plaintiff's original Complaint. Thus, the Court will consider the Exhibits as Exhibits to the Amended Complaint. The Court can consider documents attached to the Complaint or Amended Complaint without converting the instant Motion to Dismiss to a Motion for Summary Judgment. *Greenburg v. Life Ins. Co. of Va.,* 177 F.3d 507, 514 (6th Cir. 1999).

4

relevant part:

> I discovered on March 22, 11, that on March 17, 11, Dr. McNeil at "0720" wrote in my medical file I was "medically clear." Dr. McNeil had medically cleared me approximately between 7 to 9 hours prior to my being seen by Dr. Baker. Without knowing Dr. Baker's diagnosis of my medical condition or the medical action taken by Dr. Baker, that Dr. McNeil knowingly and intentionally medically cleared me to leave Special Needs. Dr. McNeil never consulted with Dr. Baker prior to or after my 2:30 p.m. consultation with Dr. Baker nor reviewed my medical file containing Dr. Baker's refusal to medically clear me. Dr. McNeil's actions was done so without regard for my health or safety. Dr. McNeil's actions demonstrate malpractice, ignorance, negligence and incompetence in the course of professional practice. Further Dr. McNeil's actions demonstrate unprofessional and unethical conduct during the course of professional practice.

Docket No. 1, p. 84.

Plaintiff's "requested solution" in his grievance was: (1) report Dr. McNeil immediately to medical board; (2) Dr. McNeil be immediately released of all responsibilities, directly or indirectly, concerning inmates; (3) be suspended 10 days without pay; and (4) "immediately return me to Special Needs until completely healed." Docket No. 1, p. 83.

On March 24, 2011, Defendant Clark sent a Memorandum to the grievance chairperson at DSNF informing them that Plaintiff had filed a grievance at TCIX pertaining to DSNF. Docket No. 1, p. 85. Shortly thereafter, Dr. McNeil submitted a written response to the grievance, which stated:

> I have reviewed the medical records associated with your concerns in your correspondence dated 03/24/2011. Based on this review, you are receiving the necessary medical treatment as noted on the Physician's Order and Progress Notes. In addition, I have reviewed the daily Sick Call Roster and Consultation Reports.

*Id.*, p. 90.

5

It appears that Defendant Clark provided Dr. McNeil's response to Plaintiff on April 14, 2011. *Id.*, p. 94.

On March 30, 2011, Plaintiff was transferred back to DSNF, presumably for follow-up by Dr. Baker. On April 3, 2011, he was again transferred back to TCIX. *Id.*, p. 15. On April 20, 2011, Plaintiff was transferred to DSNF for a consultation with Dr. Baker.

On April 25, 2011, Plaintiff "received notice that his grievance against Dr. McNeil would be heard while at DSNF." Docket No. 47, p.16. While this statement is subject to two different interpretations, it appears that Plaintiff means that, while he was at DSNF, he received notice that his grievance against Dr. McNeil would be heard. Exhibit 23 is a Memorandum to Plaintiff from Defendant Clark dated April 20, 2011. Docket No. 1, p. 97. That Memorandum states that Plaintiff's grievance hearing had been scheduled for April 26, 2011, but it is on TCIX letterhead and it says nothing about the grievance hearing being scheduled at DSNF.

The grievance hearing was apparently held April 26, 2011, at TCIX. At that time, Plaintiff was at DSNF. The "Inmate Grievance Committee's Response and Reasons" state: "Since grievant is temporarily assigned to Special Needs for treatment this grievance is resolved." Docket No. 1, p. 99. As discussed above, one of the solutions Plaintiff requested in his grievance was that he be returned to DSNF.

Plaintiff has submitted a document headed "Grievance Hearing Minutes." Docket No. 1, p. 100. The minutes reflect that Plaintiff's grievance hearing was held before Defendant Clark, Grievance Chairperson, staff members of the Grievance Committee Dr. T. Williams and J.

6

Carroll, and inmates F. Adams and C. McLeod.[2] The Committee's response to the grievance was later upheld by Warden Lester, Assistant Commissioner Hodge, and Commissioner Schofield.

Plaintiff's claims against Defendant Moran are based upon his allegations that she "denied" him access to "medical complaint processes" provided in the Tennessee Code, that she "refused" to process his complaints against Defendants Caudle, McNeil, and Butler, and that she denied him the opportunity to have his complaints adjudicated pursuant to "Title 63" of the Tennessee Code. These claims relate to a letter dated February 15, 2011, that Plaintiff sent to the "Department of Health Office of Investigation." The body of that letter states in full as follows:

> The enclosed three medical complaints are all interconnected. The main complaint is the one against Don Caudle. The complaint against Dr. McNeil is basically failure of Dr. McNeil to properly supervise the physical therapist and the physical therapy department. And the complaint against Dr. Butler is two-fold. Dr. Butler ordered physical therapy without sufficient medical data to support physical therapy and his decision caused me unnecessary injuries. When you investigate these complaints it should be investigated together since they are all three interconnected.

Docket No. 1, p. 66.

Ms. Moran, the "Director of Investigations" for the Tennessee Department of Health Bureau of Licensure and Regulation, wrote Plaintiff a response letter dated March 14, 2011. That letter states in relevant part:

> Health Related Board/Office of Investigations is not authorized to diagnose and treat illness or disease, nor assist you in your receipt of medical care. Medical care is under the authority of the institution's medical staff.

---

[2] Although the "date" of the Grievance Hearing Minutes is April 12, 2011, it appears that this is a typographical error, and that the hearing was actually held April 26, 2011. Docket No. 1, p. 99.

> Any further complaints concerning your medical care, or complaints against the licensed health professional and others within your institution, may be addressed through the inmate grievance procedures at the Institution, or by sending your complaint to the Department of Correction . . . . Your request has been forward to the Department of Corrections, Director of Health Services. Any further complaints of this nature should be addressed directly with that department.

Docket No. 1, p. 80.

The United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

It is readily apparent that Plaintiff has failed to state a claim upon which relief can be granted against Defendants Clark, Lester, Hodge, or Schofield. While Plaintiff complains that Defendant Clark prohibited him from having his grievance heard by the grievance board and failed to properly enforce the grievance process, it is clear that a grievance hearing was held.

8

The fact that Plaintiff was not able to attend the grievance hearing because he had been transferred back to DSNF is of no import. Plaintiff has no Constitutional right to any grievance procedure at all. *Corn v. Lewis*, 1993 WL 210702 (6th Cir.); *Walker v. Michigan Dept. of Corr.*, 128 Fed. Appx. 441 (6th Cir. 2005). Furthermore, Plaintiff cannot show that the resolution of his grievance subjected him to any atypical or significant hardship. *Sandin v. Conner,* 515 U.S. 472, 483-84.

Moreover, the fact that Defendants Lester, Hodge, and Schofield agreed with or upheld the Committee's response to the grievance gives rise to no liability on their part, because a complaint to a supervisory official is an insufficient basis to establish personal liability for a constitutional violation. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). A combination of knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983. *Henry v. Pogats,* 35 F.3d 565 (6th Cir. 1994); *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).

With regard to Ms. Moran, it is difficult to see how she denied or refused Plaintiff anything. Title 63 of the Tennessee Code comprises approximately 574 pages. Plaintiff has not cited any specific provision of Title 63 that would grant him any rights whatsoever.[3] Furthermore, even if he did, a violation of Plaintiff's rights under state law is not actionable

---

[3] Plaintiff wrote Ms. Moran another letter dated April 8, 2011, in which he stated his "objections" for Ms. Moran's alleged "refusal to carry out your mission required by statute." Docket No. 1, p. 91. He cites no statute regarding the "mission" of Defendant Moran. His only reference to a specific statute is to T.C.A. § 63-13-207. Docket No. 1, p. 91 n.4. While that statute is entitled "Delegation of Tasks to Unlicensed Personnel," it provides circumstances under which a "licensed physician, occupational therapist, or licensed occupational therapy assistant, may delegate to an unlicensed person specific routine tasks associated with non-treatment aspects of occupational practice . . . ." Plaintiff, however, has made no allegation that Mr. Caudle was an occupational therapist or an occupational therapy assistant.

under the plain language of 42 U.S.C. § 1983.

Plaintiff has also sued the moving Defendants in their official capacities. It appears that the moving Defendants are all employees of the State of Tennessee. To the extent that Plaintiff raises official capacity claims against the moving Defendants, they stand in the shoes of the entity they represent, the State of Tennessee. *Claybrook v. Birchwell,* 199, F.3d 350, 355 n.4 (6th Cir. 2000) *citing Kentucky v. Graham,* 473 U.S. 159, 165 (1985). It is well-established, however, that a state is not a person for purposes of § 1983. *See, e.g., Will v. Michigan Dep't. of State Police,* 491 U.S. 58, 71 (1989). Because the State of Tennessee is not a "person" subject to suit for damages under 42 U.S.C. § 1983, Plaintiff has failed to state a claim upon which relief can be granted with regard to his official capacity claims.

The moving Defendants also make an argument that this action should be dismissed without prejudice for Plaintiff's failure to plead and show exhaustion of administrative remedies. Docket No. 67, p. 6. It is unnecessary for the Court to consider this argument, but the Court is compelled to note that it is no longer good law. As the moving Defendants note, a number of Sixth Circuit cases had held that prisoner plaintiffs should attach to their § 1983 complaints the administrative decisions showing the administrative dispositions of their complaints. Those cases held that plaintiff had the burden of demonstrating that his administrative remedies were fully exhausted before he brought his claim.

In *Jones v. Bock*, 549 U.S. 268 (2007), the Supreme Court effectively overruled prior Sixth Circuit case law, holding that a plaintiff's failure to exhaust administrative remedies is an affirmative defense under the Prison Litigation Reform Act. Therefore, the burden is not upon plaintiff to prove exhaustion; it is upon defendant to prove failure to exhaust.

For the foregoing reasons, the undersigned concludes that Plaintiff has failed to state a claim upon which relief can be granted against Defendants Clark, Lester, Hodge, Schofield, and Moran. Therefore, the instant Motion to Dismiss (Docket No. 66) should be GRANTED, and Plaintiff's claims against these Defendants should be DISMISSED WITH PREJUDICE.[4]

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. Clifton Knowles
United States Magistrate Judge

---

[4] A dismissal for failure to state a claim upon which relief can be granted is a dismissal on the merits. *See Federated Dept. Stores, Inc., v. Moitie,* 452 U.S. 394, 399 n.3. (1981); *Pratt v. Ventas, Inc.,* 365 F.3d 514, 522 (6th Cir. 2004).